# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| RONALD SATISH EMRIT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cv-00908-MTS |
| | ) | |
| SABINE AISHA JULES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Ronald Satish Emrit for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice. *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B); and 28 U.S.C. § 1406(a).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To avoid dismissal, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a self-represented individual and an extremely prolific litigant in the federal court system. The United States District Court for the Northern District of Florida has counted 338 lawsuits that he has filed. *See Emrit v. Jules*, No. 4:23-cv-8-WS-MAF (N.D. Fla.). Meanwhile, the United States District Court for the Southern District of Indiana tallied 674 cases initiated by plaintiff in the federal courts over the last ten years. *See Emrit v. Jules*, No. 1:23-cv-1197-RLY-MKK (S.D. Ind.). When this Court searched for plaintiff on the government's Public Access to

Court Electronic Records (PACER) website, the Court found plaintiff to have originated 420 federal civil cases all across the country. The Court will take judicial notice of these filings.[1]

Due to plaintiff's history of abusive litigation, several United States District Courts have barred him from filing new complaints, unless certain conditions are met. *See Emrit v. University of Miami School of Law*, 2023 WL 2910903, at *2 (S.D. Fla. Mar. 29, 2023) (adding plaintiff to restricted-filer list, and barring him "from initiating any lawsuits in the Southern District of Florida unless he either (1) tenders the full filing fee required to initiate a lawsuit; (2) is represented by a licensed attorney; or (3) is granted prior leave to proceed by a judge in this district"); *Emrit v. DeVos*, 2020 WL 9078298, at *4 (M.D. Fla. Apr. 20, 2020) (determining that plaintiff "is a vexatious litigant" and prohibiting him from filing any new document in the Middle District of Florida "without first obtaining prior written approval of the senior Magistrate Judge"); *Emrit v. Trump*, 2019 WL 935028, at *1 (S.D. Ohio Feb. 26, 2019) (enjoining and prohibiting plaintiff "from filing any additional complaints in the Southern District of Ohio which have not first been certified to have been filed in the correct venue by an attorney in good standing," or in which the full filing fee is paid); *Emrit v. Simon*, 2017 WL 11483905, at *1 (D. Minn. Dec. 8, 2017) (restricting plaintiff from filing new cases "unless he is represented by licensed counsel or receives prior written authorization"); and *Emrit v. Social Security Administration*, 2015 WL 4597834, at *1 (D. Nev. July 29, 2015) (finding plaintiff to be a vexatious litigant, and prohibiting him "from

---

[1] A federal district court may take judicial notice of public records and judicial opinions. *See Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"); *Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may consider them on a motion to dismiss"); *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 935 n.7 (8th Cir. 2014) (explaining that "federal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue"); and *Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 918 (8th Cir. 2014) ("A district court may properly take judicial notice of items in the public record, such as judicial opinions").

3

filing any complaint, petition, or other document in this court without first obtaining leave of this court").

Beginning in January 2023, plaintiff began filing lawsuits in various federal district courts against defendant Sabine Aisha Jules. More specifically, the Court has found thirty separate lawsuits, many of them nearly identical, all naming Jules – plaintiff's ex-wife – as defendant, and generally accusing her of tortious interference with family relations. Of these cases, two were transferred,[2] thirteen were dismissed prior to service,[3] and fifteen are pending initial review.[4]

Plaintiff filed the instant action on July 17, 2023, by which point thirteen prior cases against defendant Jules had already been dismissed on initial review by eleven different United States District Courts. As noted by the United States District Court for the Southern District of Indiana, there are 94 judicial districts in the United States of America, and plaintiff is clearly "making the

---

[2] *See Emrit v. Jules*, No. 2:23-cv-1208-CJB-JUM (E.D. La. May 10, 2023) (transferring case to Southern District of Florida); and *Emrit v. Jules*, No. 3:23-cv-1573-DCC (D. S.C. June 26, 2023) (transferring case to Southern District of Florida).

[3] *See Emrit v. Jules*, No. 0:23-cv-60014-RAR (S.D. Fla. Jan. 18, 2023) (dismissed for failure to state a claim); *Emrit v. Jules*, No. 2:23-cv-3-RWS (N.D. Ga. Jan. 19, 2023) (dismissed under 28 U.S.C. § 1915(e) for frivolousness and failure to state a claim); *Emrit v. Jules*, No. 4:23-cv-8-WS-MAF (N.D. Fla. Feb. 10, 2023) (dismissed under 28 U.S.C. § 1915A for frivolousness, failure to state a claim, and as an abuse of judicial process); *Emrit v. Jules*, No. 5:23-cv-110-DCR (E.D. Ky. Apr. 11, 2023) (dismissed for lack of subject matter jurisdiction); *Emrit v. Jules*, No. 3:23-cv-16-NKM (W.D. Va. Apr. 12, 2023) (dismissed for lack of subject matter jurisdiction); *Emrit v. Jules*, No. 5:23-cv-179-FL (E.D. N.C. May 2, 2023) (dismissed for failure to prosecute and for lack of subject matter jurisdiction); *Emrit v. Jules*, No. 3:23-cv-101-MPM-RP (N.D. Miss. May 11, 2023) (dismissed for lack of subject matter jurisdiction); *Emrit v. Jules*, No. 0:23-cv-60708-AHS (S.D. Fla. May 31, 2023) (dismissed for failure to state a claim); *Emrit v. Jules*, No. 1:23-cv-993-UNA (D. D.C. June 12, 2023) (denying motion for leave to proceed in forma pauperis and dismissing case because plaintiff was a banned filer); *Emrit v. Jules*, No. 0:23-cv-61210-RS (S.D. Fla. June 29, 2023) (dismissed for lack of subject matter jurisdiction); *Emrit v. Jules*, No. 4:23-cv-278-CVE-MTS (N.D. Okla. July 11, 2023) (dismissed for improper venue); *Emrit v. Jules*, No. 3:23-cv-50250 (N.D. Ill. July 13, 2023) (dismissed for lack of subject matter jurisdiction); and *Emrit v. Jules*, No. 1:23-cv-1197-RLY-MKK (S.D. Ind. July 14, 2023) (dismissed as frivolous and abusive).

[4] *See Emrit v. Jules*, No. 2:23-cv-453-RDP (N.D. Ala.) (filed Apr. 10, 2023); *Emrit v. Jules*, No. 8:23-cv-978-DLB (D. Md.) (filed Apr. 10, 2023); *Emrit v. Jules*, No. 4:23-cv-352-KGB (E.D. Ark.) (filed April 13, 2023); *Emrit v. Jules*, No. 1:23-cv-49-CJW-KEM (N.D. Iowa) (filed July 6, 2023); *Emrit v. Jules*, No. 2:23-cv-2305-JAR-TJJ (D. Kan.) (filed July 7, 2023); *Emrit v. Jules*, No. 4:23-cv-3122-JFB-PRSE (D. Neb.) (filed July 7, 2023); *Emrit v. Jules*, No. 4:23-cv-231-SMR-HCA (S.D. Iowa) (filed July 10, 2023); *Emrit v. Jules*, No. 1:23-cv-733-HYJ-RSK (W.D. Mich.) (filed July 10, 2023); *Emrit v. Jules*, No. 4:23-cv-697-Y (N.D. Tex.) (filed July 10, 2023); *Emrit v. Jules*, No. 3:23-cv-456-WMC (W.D. Wis.) (filed July 10, 2023); *Emrit v. Jules*, No. 1:23-cv-1344-BMB (N.D. Ohio) (filed July 11, 2023); *Emrit v. Jules*, No. 3:23-cv-3013-RAL (D. S.D.) (filed July 11, 2023); *Emrit v. Jules*, No. 4:23-cv-643-ALM-KP (E.D. Tex.) (filed July 11, 2023); *Emrit v. Jules*, No. 6:23-cv-31 (S.D. Tex.) (filed July 12, 2023); and *Emrit v. Jules*, No. 3:23-cv-131-ARS (D. N.D.) (filed July 13, 2023).

4

rounds" in an attempt to find one that will entertain his case. *See Emrit v. Jules*, No. 1:23-cv-1197-RLY-MKK (S.D. Ind. July 14, 2023).

### The Complaint

As noted above, plaintiff is a self-represented litigant who has filed a civil action against Sabine Aisha Jules, who is identified as plaintiff's ex-wife. The complaint is not on a Court-provided form. Plaintiff states at the outset that he is looking "to obtain an injunction as an equitable remedy in the form of an annulment regardless of the Rooker-Feldman Doctrine or the previous divorce granted in 2006" by Judge Susan Greenhawt in Broward County, Florida. (Docket No. 1 at 1).

In the section of the complaint titled "Nature of the Case," plaintiff asserts that "Supreme Court Justice Clarence Thomas would agree that the plaintiff has a First Amendment freedom of association to get married to a Caucasian woman from the Ukraine," and to have that fundamental right protected by the Fifth and Fourteenth Amendments, "pursuant to a broad interpretation of the stare decisis of Loving v. Virginia."[5] Docket [1] at 1-2. He further states that "Supreme Court Justice Samuel Alito would agree that it is a form of witchcraft reminiscent of the Salem Witch Trials…to deprive an American man of the opportunity to have one legally-recognized marriage to a Caucasian woman from the Ukraine." *Id*. Plaintiff contends "that the American family structure is of the utmost important and that if an American man wants a Stepford wife from the Ukraine to be his only legally recognized marriage, then this implied fundamental right is also protected by" the Fourth Amendment's right to privacy, the Due Process Clause of the Fifth and

---

[5] This is an apparent reference to *Loving v. Virginia*, 388 U.S. 1, 12 (1967), which determined that "[t]he Fourteenth Amendment requires that the freedom of choice to marry not be restricted by invidious racial discriminations," and that "the freedom to marry or not marry, a person of another race resides with the individual and cannot be infringed by the State." The Court notes that *Loving* has absolutely no relevance to the instant case. That is, plaintiff does not allege that the state has kept him from marrying another person on account of race. Rather, as best the Court can tell, plaintiff is seeking to have a divorce changed to an annulment, so that he does not have to tell his future wife about his past wife.

Fourteenth Amendments, and the Thirteenth Amendment, which abolished slavery and indentured servitude. *Id*. at 2.

Plaintiff blithely admits that he "is now forum shopping in several federal courts to obtain an annulment of a previous marriage." *Id*. Specifically, as noted above, he was divorced in 2006 pursuant to an order by Judge Greenhawt of the 17th Judicial Circuit of Broward County, Florida. At that time, a $5,000 child support order was also entered, which he appealed. Eventually, in 2009, his parental rights were terminated, rendering the child support order "null and void as if the plaintiff had given his daughter up for adoption." *Id*. The termination of parental rights took place in Deerfield Beach, Florida. Plaintiff also mentions litigating against a foster care agency in Utah and Hawaii.

Despite getting married in Las Vegas, Nevada, on August 31, 2002, and getting divorced in Fort Lauderdale, Florida, in 2006, "plaintiff argues that he can obtain an annulment anywhere in the United States based on a theory of federal question of Equal Protection, Due Process, Freedom of Association, Right to Privacy, Privileges and Immunities and/or diversity of jurisdiction." Docket [1] at 3.

In the section of the complaint titled "Parties to this Litigation," plaintiff explains that he "is an indigent, disabled, and unemployed resident of" both Florida and Maryland. He states that he splits his time evenly between those two states, and that his current mailing address is Bowie, Maryland. As to defendant, plaintiff "believes" that she "lives in the vicinity of Fort Lauderdale and/or Broward County," but that he does not know where to serve process. *Id*. at 3. He therefore suggests serving defendant via "publication in a local newspaper such as [the] Miami Daily Herald." *Id*.

In the section of the complaint titled "Jurisdiction and Venue," plaintiff acknowledges that this Court does not have "personal or subject matter jurisdiction over this issue." Doc. [1] at 3-4. Nevertheless, he insists that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, "because there is complete diversity of jurisdiction between the plaintiff and the five defendants[,] given that the plaintiff lives in Sarasota, Florida and no longer in Fort Worth, Texas."[6] Doc. [1] at 4. However, plaintiff acknowledges that there is no amount in controversy, as he is seeking "$0," which is – as he notes – "less than $75,000." *Id.*

In addition, plaintiff contends that the Court has federal question jurisdiction, "because this proceeding involves a discussion of Title VII of the Civil Rights Act of 1964, [the] Americans with Disabilities Act of 1990, [the] Equal Protection Clause, [the] Due Process Clause, [the] Fourth Amendment, and [the] Privileges and Immunities Clause." Plaintiff also alleges that venue in this district is proper, though he provides no support for this proposition.

In the "Statement of Facts" section of the complaint, plaintiff begins with a vague recapitulation of some of his past litigation history. He notes that three separate cases he filed against defendant in South Carolina, Tennessee, and Louisiana were all transferred to Florida. Doc. [1] at 4-5. Plaintiff opines that "[i]f litigation were a chessboard, then the state of Tennessee would be a bishop, the state of South Carolina would be a rook, and the state of Louisiana is shaped like a knight, and it would be checkmate in the sense that Florida is a white or black king on the other side of the chessboard." Doc. [1] at 5. In other words, plaintiff suggests that his cases in South Carolina, Tennessee, and Louisiana "are all necessary pieces on the chessboard to obtain an annulment from" defendant, so that he can have a legal declaration that he "was never married" to her. *Id.*

---

[6] The Court notes that plaintiff refers to "five defendants," though only one is listed in the complaint. This mistake appears in other complaints plaintiff has filed in other districts, as well.

Plaintiff explains that getting an annulment from defendant is "extremely important" to him because his "fiancé from the Ukraine does not know that he was married before to a Haitian-American woman." *Id.* at 5. He asserts that his "previous marriage to a woman that is not his type is extremely embarrassing to" him, and that he "wants to re-write his life story to exclude his previous marriage." *Id.* Plaintiff further states that he "does not want a woman appearing out of nowhere…claiming to be [his] daughter[,] which would interfere with [his] engagement to another woman from the Ukraine." *Id.* In other words, plaintiff believes that his former daughter and former wife "might interfere with [his] future marriage to a woman from the Ukraine who is more important to" him. *Id.*

Due to the possibility that he might have to get a liver transplant, plaintiff "believes that time is of the essence" in obtaining an annulment. Doc. [1] at 5-6. He wants to "enjoy the rest of his life with a future marriage to a woman from the Ukraine without any tortious interference with family relations by" defendant or defendant's daughter. *Id.*

In "Count One" of the complaint, plaintiff alleges that defendant "committed the tortious interference with family relations by interfering with his prior engagement to" a woman from Cuba. Doc. [1] at 6. There are no facts to support this claim, though plaintiff contends that the Court "should take judicial notice that the plaintiff only attended Saint Thomas University School of Law in Miami Gardens, Florida to be in close proximity" to the relatives of his previous fiancé. Doc. [1] at 6-7.

Plaintiff concludes his complaint with a "Prayer for Relief," explaining that he "is seeking the equitable remedy of an injunction" that will declare he "was never married to" defendant. Doc. [1] at 7. He affirms that he "is not seeking punitive, compensatory, treble, actual, presumed, and

special damages for [defendant's] commission of the aforementioned torts because [he] appreciates that the sole defendant allowed him to terminate his parental rights." *Id*.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action against defendant seeking to have a prior divorce changed to an annulment. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A. Federal Subject Matter Jurisdiction

Subject matter jurisdiction refers to a court's power to decide a certain class of cases. *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). The presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). "Subject matter jurisdiction can never be waived or forfeited." *Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 838 (8th Cir. 2022).

Because jurisdiction is a threshold requirement, the issue of subject matter jurisdiction may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976,

982 (8th Cir. 2009). *See also City of Kansas City, Mo. v. Yarco Co., Inc.*, 625 F.3d 1038, 1040 (8th Cir. 2010) ("Federal courts have an independent duty to determine subject matter jurisdiction, even where the matter is raised for the first time on appeal and on the court's own motion"). The burden of proving subject matter jurisdiction belongs to the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). *See also Magee v. United States*, 9 F.4th 675, 680 (8th Cir. 2021) ("The burden of proving the existence of subject matter jurisdiction rests with the party invoking federal jurisdiction").

Federal courts have subject matter jurisdiction over both federal question cases and diversity of citizenship cases. *See Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007) (finding that subject matter jurisdiction is lacking if neither diversity of citizenship nor federal question jurisdiction applies); *McLaurin v. Prater*, 30 F.3d 982, 984-85 (8th Cir. 1994) (noting that Congress has directed that district courts shall have jurisdiction in both federal question and diversity cases). In this case, plaintiff has not demonstrated that either form of jurisdiction is present.

### i.    Diversity Jurisdiction

"Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interest and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001). Subject matter jurisdiction premised upon diversity of citizenship is measured by "the state of facts that existed at the time of filing." *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004).

With regard to the amount in controversy, a complaint making a good faith allegation of the jurisdictional amount is sufficient to confer jurisdiction. *Scottsdale Ins. Co. v. Universal Crop*

*Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010). However, a "complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id. See also Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002). "The legal certainty standard is met where the legal impossibility of recovery is so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 995 (8th Cir. 2017).

As to diversity of the parties, "[c]omplete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Diversity jurisdiction requires that the parties be citizens of different states, not merely residents. *Sanders*, 823 F.2d at 216. For purposes of diversity, state citizenship "requires an individual's physical presence in the state coupled with an indefinite intention there to remain." *Blakemore v. Missouri Pac. R.R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986). "Once an individual has established his state citizenship, he remains a citizen of that state until he legally acquires a new state of citizenship." *Eckerberg v. Inter-State Studio & Publishing Co.*, 860 F.3d 1079, 1086 (8th Cir. 2017).

In this case, it is unclear whether there is diversity between the parties. Plaintiff states that he splits his time between Florida and Maryland, without asserting citizenship in either state. In the meantime, plaintiff believes – but is not certain – that defendant is somewhere in Florida.

Ultimately, the diversity of the parties does not matter, because plaintiff freely acknowledges that he is not seeking damages over $75,000. In fact, he stressed that he is seeking "$0," and wants only equitable relief. Since he has not alleged damages over the jurisdictional threshold, there is no diversity jurisdiction under 28 U.S.C. § 1332.

Moreover, even if plaintiff had requested damages, he cannot establish diversity jurisdiction because his case falls within the domestic relations exception to federal jurisdiction.

11

The domestic relations exception "divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child custody." *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994). Furthermore, when a cause of action is closely related to an action for divorce, alimony, or child custody, federal courts generally abstain from exercising jurisdiction. *Id*. Here, plaintiff seeks to have his Florida divorce somehow turned into an annulment. This request fits squarely within the domestic relations exception.

For these reasons, plaintiff has failed to carry his burden of establishing the existence of diversity jurisdiction in this case.

**ii.     Federal Question Jurisdiction**

Federal question jurisdiction gives district courts "original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). *See also* 28 U.S.C. § 1331. Whether a claim arises under federal law is determined by reference to the "well-pleaded complaint." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016). The well-pleaded complaint rule provides that jurisdiction exists only when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017). *See also Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014) ("Under the well-pleaded complaint rule, a federal question must exist on the face of the plaintiff's properly pleaded complaint in order to establish federal question subject matter jurisdiction").

Plaintiff's complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998). *See also Northwest South*

*Dakota Production Credit Ass'n v. Smith*, 784 F.2d 323, 325 (8th Cir. 1986) (stating that "[a] non-frivolous claim of a right or remedy under a federal statute is sufficient to invoke federal question jurisdiction"). "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

In this case, plaintiff presents several potential federal questions he insists gives the Court jurisdiction. None of them do.

First, plaintiff states that this case "involves a discussion of Title VII." The purpose of Title VII is to ensure a workplace environment free of discrimination. *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009). The act prohibits "employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like." *Winfrey v. City of Forrest City, Ark.*, 882 F.3d 757, 758 (8th Cir. 2018).

Nothing in the complaint implicates Title VII. It is not about discrimination in any way, let alone workplace discrimination. Furthermore, defendant is not plaintiff's employer, she is his ex-wife. Title VII addresses only the conduct of "employers." *See* 42 U.S.C. § 2000e-2(a); and *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006). As Title VII has no bearing on this action, it does not provide a jurisdictional basis.

Second, plaintiff suggests the relevance of the Americans with Disabilities Act (ADA). Title I of the ADA "bars private employers from discriminating against a qualified individual on the basis of disability." *Faidley v. United Parcel Serv. of America, Inc.*, 889 F.3d 933, 940 (8th Cir. 2018). Discrimination includes an employer not making a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012). Under Title II of the ADA,

public entities are prohibited from discrimination based on disability in services, programs, or activities. *See I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch.*, 863 F.3d 966, 972 (8th Cir. 2017).

While plaintiff certainly mentions that he is disabled, he does not present any facts regarding the nature of that disability. More importantly, as noted above, this case does not involve discrimination in any form, much less disability discrimination. That is, plaintiff is not alleging that his employer discriminated against him, that he suffered an adverse employment action on account of his disability, or that a public entity has denied him access to programs or services due to his disability. Rather, he is seeking to have his past divorce changed to an annulment, and for some reason is suing his ex-wife in order to accomplish this. Defendant is neither an employer nor a public entity. As such, the ADA has no bearing on this action, and therefore fails to provide a jurisdictional basis for plaintiff's complaint.

Third, plaintiff presents several possible constitutional violations under the Fourth and Fourteenth Amendments. Liberally construed, it seems that plaintiff is attempting to bring a 42 U.S.C. § 1983 action, which would obviously present a federal question. *See Convent Corp. v. City of North Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015) (explaining that a claim brought pursuant to 42 U.S.C. § 1983 "arises under federal law and will support federal-question jurisdiction pursuant to § 1331").

The problem, though, is that none of plaintiff's facts support a claim under 42 U.S.C. § 1983. In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v.*

*Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). Plaintiff has not demonstrated the existence of either element.

With regard to the first, plaintiff has not even remotely alleged that his ex-wife is a state actor or took any action under color of state law. Instead, defendant appears to be a private citizen. *See Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that 42 U.S.C. § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); and *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that 42 U.S.C. § 1983 secures constitutional rights from government infringement, not infringement by private parties). As to the second element, not one fact in the complaint hints at an actual constitutional violation. Instead, as already noted, plaintiff is seeking to have a Florida divorce turned into an annulment, so that he is not faced with explaining that divorce to a future wife. This is insufficient to establish 42 U.S.C. § 1983's bearing on this case, and thus, § 1983 does not provide a jurisdictional basis.

For these reasons, plaintiff has failed to carry his burden of establishing the existence of federal question jurisdiction in this case.

### iii.    Rooker-Feldman Doctrine

In the first sentence of his complaint, plaintiff asserts that the *Rooker-Feldman* Doctrine does not apply to his case. Having reviewed the case, it appears that it does.

"The *Rooker-Feldman*[7] doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Kvalvog v. Park Christian School, Inc.*, 66 F.4th 1147, 1152 (8th Cir. 2023) (quoting *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005)). As the Supreme Court has explained, the

---

[7] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

doctrine bars federal courts from hearing cases brought by the losing party in state court proceedings that allege "injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *See also Parker Law Firm v. Travelers Indemnity Co.*, 985 F.3d 579, 583 (8th Cir. 2021) (explaining that "inferior federal courts generally lack subject matter jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings").

Because "jurisdiction to review most state court judgments is vested exclusively in the Supreme Court," federal "district courts may not review state court decisions, even if those challenges allege that the state court's action was unconstitutional." *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003). That is, "[f]ederal courts are not courts of review even for federal claims asserted in a state court proceeding." *Williams v. McKenzie*, 834 F.2d 152, 153 (8th Cir. 1987) (stating that federal court lacked jurisdiction to pass on merits of claim dismissed by state court, even though it was brought under 42 U.S.C. § 1983 and 42 U.S.C. § 1985). As a result, "a litigant cannot circumvent *Rooker-Feldman* by recasting his or her lawsuit as a [42 U.S.C.] § 1983 action." *See Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997).

For the *Rooker-Feldman* doctrine to apply, the state and federal claims need not be identical. *In re Goetzman*, 91 F.3d 1173, 1177 (8th Cir. 1996). Rather, a district court is prevented from exercising jurisdiction over a constitutional challenge if it is "inextricably intertwined with claims asserted in a state court proceeding." *Keene Corp. v. Cass*, 908 F.2d 293, 296 (8th Cir. 1990). "[T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id*. at

296-97. When federal relief can only be predicated on the conviction that the state court was wrong, the claim is "a prohibited appeal of the state-court judgment." *Id*. at 297.

*Rooker-Feldman* "is a narrow doctrine." *Lance v. Dennis*, 546 U.S. 459, 464 (2006). It is confined to cases brought by the losing party in a state-court action, and does not bar actions filed by nonparties to earlier state court judgments. *See Shelby County Health Care Corp. v. Southern Farm Bureau Casualty Ins. Co.*, 855 F.3d 836, 841 (8th Cir. 2017).

In addition, the *Rooker-Feldman* "doctrine is limited in scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings." *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016). *See also MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Assoc.*, 546 F.3d 533, 539 (8th Cir. 2008) ("The doctrine does not apply to cases that raise independent issues").

By way of example, "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal court." *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008). *See also Skit Intern., Ltd. v. DAC Technologies of Arkansas, Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007) (determining that *Rooker-Feldman* prevented jurisdiction over plaintiff's claim because plaintiff sought redress "directly from the state court judgment itself rather than from some separate injury caused by the defendant").

On the other hand, if "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Riehm*, 538 F.3d at 965 (determining that *Rooker-Feldman* did not apply where plaintiffs were not parties to ex parte petition for emergency protective care, and did not seek to overturn the ex parte order, but sought redress for an unlawful seizure under the Fourth Amendment). *See also Webb as next friend of*

*K.S. v. Smith*, 936 F.3d 808, 817 (8th Cir. 2019) (determining that *Rooker-Feldman* did not bar plaintiffs' 42 U.S.C. § 1983 claim against county and two county employees for taking their minor children into emergency protective custody, because plaintiffs did "not appear to be seeking to get out from under a state-court judgment," but were "trying to obtain damages from state actors who allegedly violated their rights").

In this case, plaintiff names his ex-wife as the defendant, and vaguely accuses her of tortious interference with his family relations. Despite this, the relief plaintiff is seeking has nothing whatsoever to do with defendant. Specifically, plaintiff wants the Court to issue an injunction declaring that he was never married. To do this, he must get out from under the 2006 state court judgment of the 17th Judicial District of Broward County that granted his divorce. The Court does not have the authority to overturn that judgment. Therefore, for this reason as well, the case must be dismissed for lack of subject matter jurisdiction.

### B. Failure to State a Claim

Even if the Court had jurisdiction over this matter, plaintiff has failed to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (allowing district court to dismiss an in forma pauperis action at any time if the court determines plaintiff has not stated a claim).

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Court must accept factual allegations as true, it "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). *See also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (explaining that while "the court must take the plaintiff's factual allegations as true," this "tenet does not apply…to legal conclusions or formulaic

18

recitations of the elements of a cause of action," and that "such allegations may properly be set aside"). Furthermore, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).

In this case, plaintiff provides no facts demonstrating a right to relief against defendant. The majority of the complaint has nothing to do with anything defendant did or did not do, but instead focuses on plaintiff's desire to overturn a 2006 divorce and transform it into an annulment so that he can have "selective amnesia" and deny his prior relationship. There is no suggestion that defendant has any authority over this request, and very little to indicate why plaintiff has named his ex-wife as a defendant to this action.

The Court notes that at the end of the complaint, plaintiff alleges "tortious interference with family relations." In this solitary count, "plaintiff argues that the sole defendant… committed… tortious interference with family relations by interfering with his prior engagement" to a woman from Las Tunas, Cuba. Earlier in the complaint, plaintiff expressed his fear that defendant would do so again. This is the extent of the allegations against defendant, and amounts to nothing more than stating a cause of action and concluding that defendant is liable for it. Plaintiff's pleading – in which he contends that defendant committed tortious interference by interfering – consists of no facts actually describing what defendant did, and certainly no facts demonstrating that defendant is liable to plaintiff under any legal theory. The Court is not required to accept plaintiff's conclusory pleadings as true, and will not do so here. Therefore, plaintiff's complaint is subject to dismissal for failure to state a claim.

## C. Maliciousness

Plaintiff's complaint is also subject to dismissal for maliciousness. *See* 28 U.S.C. § 1915(e)(2)(B)(i) (stating that a court may dismiss an in forma pauperis complaint at any time if

the court determines that the action is malicious). Dismissal based on maliciousness is appropriate where the plaintiff knows the allegations to be false, or where the complaint is "plainly part of a longstanding pattern of abusive and repetitious lawsuits." *Horsey v. Asher*, 741 F.2d 209, 212-13 (8th Cir. 1984). *See also Carter v. Schafer*, 273 Fed. Appx. 581 (8th Cir. 2008) (affirming district court dismissal for maliciousness where non-prisoner plaintiff "filed at least thirty separate complaints" in a five-year period, with a number of those cases raising "issues that are the same as or are substantially similar to those in the instant case, against the same defendants"); and *Cooper v. Wood*, 111 F.3d 135 (8th Cir. 1997) (unpublished opinion) (explaining that the Eighth Circuit has "interpreted 'malicious' to apply to situations where the plaintiff knows the allegations to be false…where the complaint is plainly part of a longstanding pattern of abusive and repetitious lawsuits…and where the complaint contains disrespectful references or abusive language").

Here, the instant case is "plainly part of a longstanding pattern of abusive and repetitious lawsuits." As noted above, plaintiff has filed hundreds of lawsuits in federal court, and is a banned filer in several districts based on his abuse of the judicial process. More recently, he has filed at least 30 cases against defendant in 28 different United States District Courts. This wave of filings has come over the course of five months. Many of the complaints are nearly identical, and include repeated mistakes, such as plaintiff's reference to "five defendants" when there is only one. When plaintiff's cases are dismissed, he simply moves onto other districts and files more, casually admitting that he is "forum shopping." The Court finds that plaintiff's targeting of defendant with a large volume of meritless cases over a period of five months is malicious, and an abuse of the judicial process. Therefore, plaintiff's case is subject to dismissal for maliciousness.

**D.  Improper Venue**

20

Even if the Court ignored everything else, this case would still be subject to dismissal on the basis of improper venue. A civil action may be brought only in: (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. *See* 28 U.S.C. § 1391(b).

In this case, despite plaintiff's assertion that venue is proper, it appears that the parties involved live elsewhere than the Eastern District of Missouri. Plaintiff states that he splits time between Florida and Maryland, while defendant is somewhere in Florida. There is no indication that either plaintiff or defendant has ever set foot in the Eastern District of Missouri. As to the events described in the complaint, plaintiff mentions a marriage in Nevada, a divorce in Florida, and litigation in Utah and Hawaii. At no point is there any reference to this district. To summarize, defendant does not live in this district, and nothing in the complaint happened here. Perhaps this is not surprising, as plaintiff admits he is "forum shopping," and has filed 30 similar cases in 28 other United States District Courts. In any event, venue here is improper.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Here, dismissal is the proper course. Plaintiff's complaint is subject to dismissal on numerous grounds and thirteen other district courts have already disposed of similar actions on initial review. The interests of justice would clearly not be served by transferring this case to another district when it so obviously lacks jurisdiction, fails to state a claim, and is malicious. Therefore, this case is subject to dismissal for improper venue.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis, Doc. [2], is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B); and 28 U.S.C. § 1406(a). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 24th day of July, 2023.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

22